DAVIS v. BEAN et al. (FORD et al., Interveners)..

(Circuit Court, N. D. Iowa, E. D.  January 4, 1897.)

1. COLLATERAL SECURITY—EVIDENCE OF SURRENDER—SUFFICIENCY.

The only evidence that an assignment of a decree of foreclosure given by B. to D., as security for a note, had been surrendered to B. upon renewal of the note, was the fact that it was found among B.'s papers after his death, pinned to the old note, the new note being yet unpaid. It was shown, however, that B. administered on D.'s estate, and had charge of all his papers, and that the assignment was not canceled. The correspondence between B. and D. relative to the renewal contained no reference to the assignment, the renewal being offered by D. "on the same terms" as the original loan. *Held*, the evidence did not show a surrender of the assignment.

2. EQUITABLE LIEN ON LAND—PRIORITIES.

A note executed by B. to S. provided that, upon the death of S., the money should be repaid to certain heirs of S. Nothing was said as to B.'s investment of or accounting for the money, the transaction being an absolute loan on real-estate security. B. loaned the money, taking as security a mortgage on land, which he afterwards foreclosed, assigning the decree of foreclosure to D., who had no notice of any claim by S. While the assignment was outstanding, B. had the land sold under the decree, and became the purchaser. *Held*, that the right of the heirs of D. to a lien on the land was superior to that of the heirs of S.

W. J. Knight, for complainant.

Henderson, Hurd, Lenehan & Kiesel, for defendants and interveners.

SHIRAS, District Judge.  In the bill filed by complainant, it is averred that on June 1, 1887, one Edwin Bean, then residing in Chicago, Ill., borrowed of Joseph B. Davis, then residing at Oshkosh,

Wis., the sum of $10,000, giving his promissory note therefor, payable in one year from date, and, as security for the repayment of the sum thus borrowed, Bean assigned to Davis a decree foreclosing a mortgage upon certain realty in Decorah, Iowa, the assignment reading as follows:

"District Court, County of Winneshiek and State of Iowa.

"Edwin Bean vs. A. Addicken et al.

"Decree of Foreclosure of Mortgage, Sept. 7, 1883, for $10,357.15.

"I hereby assign the above decree and all benefits to be derived therefrom to Joseph B. Davis, as collateral security for the payment of my note to him for ten thousand dollars, of even date herewith, and due one year after date. I to be allowed to collect the interest on said decree, but in no event to reduce the same to a less sum than may be due on my said note which this assignment secures.

"Chicago, June 1st, 1887.        Edwin Bean."

It is further averred by complainant that the loan thus made to Bean was not paid at the end of the year, but, at his request, an extension thereof for one year was granted by Davis, a new note for the amount being executed by Bean, and delivered to Davis, bearing date June 1, 1888; that in September, 1888, Joseph B. Davis died, testate; that, under the terms of his will, his widow (the complainant herein) took the title to, and became the owner of, the claim against said Bean; that it now appears that on March 3, 1888, Bean caused execution to be issued from the district court of Winneshiek county, Iowa, upon the foreclosure decree assigned as security to Joseph B. Davis, and a sale to be had of the property covered thereby, and at such sale the greater part of the property was bid in by Bean, and a sheriff's deed was executed to him therefor; that thereupon Bean sold a part of the premises to William Kreutler, for the sum of $150, and to Catherine Kreulter, for the sum of $300, which amounts are in possession of Levi Bullis, who acted as attorney for Bean, and has had charge over the property since the sale thereof. It is further averred that on October 9, 1890, Edwin Bean died, at Chicago, Ill., and by will, duly executed and probated, his widow, Jennie Y. Bean, became vested with the title to and ownership of all property, real and personal, left by Edwin Bean; and that George A. Follansbee was duly appointed administrator with the will annexed of the estate of said Bean, by the probate court of Cook county, Ill. It is further averred in the bill that the debt due from Bean to Davis remains unpaid, and it is prayed that it be declared that Bean purchased said realty, covered by the mortgage decree assigned to Joseph B. Davis, in trust for said Davis; that the amount found due from said Bean be declared a lien upon the realty in question, and, if the debt be not paid, that the property be sold to pay the same. To this bill, Jennie Y. Bean, George A. Follansbee, administrator of Edwin Bean's estate, and Levi Bullis, are made parties defendant, and have answered the bill, admitting the borrowing of the money by Bean of Davis, as charged, but denying that the decree of foreclosure against Addicken had been assigned as security for such loan, and denying, therefore, that the realty is equitably chargeable with a lien for the amount due from Bean to Davis.

By leave of court, Lucia D. Ford, Margaret J. Harwood, Charles J. Burton, and Edward A. Burton were allowed to appear in the case as interveners; and, in the bill filed by them, it is averred: That the interveners and one Mary E. Blair are the children and heirs of one Stephen Burton. That on or about April 6, 1881, the said Stephen Burton, at Chicago, Ill., placed in the hands of Edwin Bean the sum of $12,500, to be accounted for by said Bean as provided for in a written instrument of the following tenor:

"Received of Stephen Burton twelve thousand five hundred dollars, on which sum I agree to pay him interest at the rate of six per cent. per annum so long as he shall live, interest payable annually; and, within eighteen months after the death of said Stephen Burton, I agree to pay said principal sum in manner following: Twenty-five hundred dollars to Lucia D. Ford or her heirs; twenty-five hundred dollars to Mary E. Blair or her heirs; twenty-five hundred dollars to Margaret J. Harwood or her heirs; twenty-five hundred dollars to Charles J. Burton or his heirs; twenty-five hundred dollars to Edward A. Burton or his heirs,— together with interest on said several sums of money last mentioned at 6 per cent. per annum from the date of the last installment of interest to Stephen Burton until paid. Interest and principal payable at my office, in Chicago, Ill.

"Chicago, April 6, 1881.                                                 Edwin Bean."

—That $10,000 of this sum, so paid to Bean by Stephen Burton, was immediately loaned by Bean to the Addickens, of Decorah, Iowa, and a mortgage taken to secure such loan, being the mortgage upon which Edwin Bean obtained a decree of foreclosure in the district court of Winneshiek county, Iowa, and which complainant claims under the assignment hereinbefore recited. It is further averred that Stephen Burton died December 30, 1889, and that the sums payable to the heirs of said Burton under the agreement aforesaid have not been paid, either by Bean during his lifetime, or by his administrator since his death; and it is claimed on behalf of said interveners that the money received by Bean from their father, Stephen Burton, was a trust fund, and that they are entitled to follow it into the property in which it was invested, and that their equity thereto is superior to the claims, if any, of the complainant herein.

It thus appears that the first question to be determined is whether there is now existing and in force a valid assignment, by Edwin Bean to Joseph B. Davis, of the mortgage foreclosure decree which it is admitted had been rendered in favor of Bean by the district court of Winneshiek county, Iowa, and against Addicken and others. On behalf of defendant and interveners, it is denied that the assignment was ever in fact delivered to Davis, and is averred that, if delivered as security for the first note executed by Bean to Davis, it was surrendered up when the extension of the loan was had, and the second note was executed and delivered to Davis.

Owing to the fact that Bean and Davis, the parties to the original transaction, are both dead, the facts with regard to the loan between them and the terms thereof must be sought in the correspondence had between them, and in the papers executed by them. It appears in the evidence that Edwin Bean and Joseph B. Davis and family were on intimate and friendly terms, and, upon the death of Joseph B. Davis, Bean was appointed the administrator of his estate, and took charge of the papers belonging thereto. The first reference to the

loan of $10,000 from Davis to Bean appearing in the correspondence of the parties is found in a letter from Davis to Bean, written at Oshkosh, Wis., under date of May 28, 1887, and reading as follows:

"Dear Sir & Friend: Your esteemed favor of the 23d inst. was duly received, and would have received earlier attention, but I was away from home. I arrived home from Chicago on the morning of the 21st, and left home on that day, in answer to a telegram, and just got home last night. That is the reason that I did not write you on my return home, as I promised I would. In regard to the money matters we talked of, I will say I can let you have ten thousand for one year. Can't you come up, and bring the papers with you, and get the money, and stay long enough to eat one strawberry short cake dinner with us, if not more. If you can't come, send the assignment of the mortgage you spoke of, and I will send you the money. My better ½ wishes to be kindly remembered to you.

"Your Friend,                                          Joseph B. Davis."

From this letter it appears that Davis had been in Chicago about the 20th of May, 1887; that a loan of $10,000 from Davis to Bean had been talked about; and that, as security therefor, Bean had proposed to assign to Davis a mortgage held by him; and the letter shows that, on Davis' return to Oshkosh, he concluded to make the loan to Bean on the terms proposed. The evidence shows that on June 1, 1887, four days after the date of the above letter, Bean executed his promissory note for the sum of $10,000, payable to the order of Joseph B. Davis, and on the same date executed the written assignment of the mortgage foreclosure decree then standing in his name in the district court of Winneshiek county, Iowa; it being stated in the assignment that it was transferred as collateral security to his note to Joseph B. Davis, of even date, for the sum of $10,000. That the money was forwarded to Bean, and the loan completed, is clearly evidenced by the fact that Bean executed his note for the sum of $10,000, payable to order of Joseph B. Davis, in one year from June 1, 1887; and there is in evidence a letter from Bean to Davis, dated May 31, 1888, in which the former writes:

"I returned to my office last night, and found your favor of 20th inst. Inclosed I hand you my check, No. 519, for $400, to pay interest due 1st prox.; also new note for $10,000, one year. Please return the old note."

It is also shown in the evidence that, after the death of Bean, there was found among his papers the first note given for $10,000, with his name obliterated thereon; and it is also proved that he executed a second note for $10,000, dated June 1, 1888, and payable in one year, to the order of Joseph B. Davis, being the note sent to Davis in the letter dated May 31, 1888, as above cited. It is thus made to appear that in the latter part of May, 1887, Joseph B. Davis agreed to loan to Edwin Bean the sum of $10,000 for one year, such loan to be secured by the assignment by Bean to Davis of the decree held by Bean foreclosing the Addicken mortgage in the district court of Winneshiek county, Iowa; that Davis sent the money to Bean, who executed and sent to Davis his promissory note for the sum of $10,000, dated June 1, 1887, payable in one year from date, and secured payment of the debt thus created by assigning to Davis the foreclosure decree in the district court of Winneshiek county against Addicken et al., and by this assignment Davis became entitled to the claim represented by the assigned decree. And it further appears that the time of payment of

this debt to Davis was extended to June 1, 1889, a new note therefor being executed, bearing date June 1, 1888, and the old or first note was returned by Davis to Bean.

On behalf of the defendants and interveners, it is further claimed that though it may be true that Bean in fact executed and delivered the assignment of the foreclosure decree against Addicken and others, as security for the first note, yet, when the extension of the loan was had, the collateral security was surrendered up by Davis to Bean, and is therefore no longer in force. The only fact in support of this claim that is relied on is that the witness Johnson, who is attorney for the defendant Follansbee, administrator of Edwin Bean's estate, testifies that he found the assignment of the decree, pinned to the first note given by Bean, in an envelope, marked "Private," which was in the vault connected with Bean's office; and from this circumstance it is sought to draw the inference that, when the loan was extended, and the old note was sent by Davis to Bean, the collateral security was also surrendered. In the correspondence had between Bean and Davis with regard to the extension of the loan, there is not a word found to indicate that it was the understanding of the parties that the collateral security, evidenced by the assignment of the foreclosure decree, should be surrendered up. Thus, under date of May 20, 1888, Davis writes to Bean as follows:

"Dear Sir & Friend: Yours of the 16th inst. is received, and, in reply, I will say if you wish the money for my note for another year, on the same terms, you can have it. Will it be necessary to renew or alter the present note?"

To this letter, Bean replied, under date of May 31, 1888, as follows:

"Dear Sir & Friend: I returned to my office last night, and found your favor of 20th inst. Inclosed I hand you my check No. 519, for $400, to pay interest due 1st prox.; also new note for $10,000, one year. Please return old note."

To this letter, Davis replied, under date of June 17, 1888, acknowledging receipt of the new note and check, and concluding: "Inclosed find the old note."

Thus, it will be seen that the proposition was to continue the loan on the old terms, and, in carrying out the agreement for the extension, the only paper sent or exchanged was the new note from Bean to Davis, and the return of the old note by Davis to Bean. There is nothing, therefore, in the correspondence with regard to the extension of the loan that supports the theory that Davis surrendered up the collateral in question; and it cannot be assumed without good evidence that, when Davis agreed to extend the time of payment of the loan, he, as a mere free gift, sent back the collateral security which he had demanded, and relied upon in making the loan originally. Furthermore, if it was part of the agreement for the extension that the security should be returned, would not Bean have referred thereto in his letter sending the new note, and in which he asks Davis to return the old note, and would not Davis have mentioned the assignment as one of the inclosures, when he returns the old note, if he had in fact included it with the note? There is nothing, therefore, in the correspondence between the parties, or in the acts by them done, which lends the slightest color to the theory that

when the loan was extended, about June 1, 1888, the collateral security was delivered up by a return of the assignment of the decree of foreclosure held by Davis.

The fact that the assignment was found among the papers of Edwin Bean, after his death, has no significance, since it appears in the evidence that Bean was appointed administrator of Davis' estate, and in that capacity took possession of the papers of the estate, including the second note by him executed and sent to Davis. The testimony of the witness Johnson shows that both notes for $10,000, as well as the assignment of the decree, were found among Bean's papers; and it is not questioned by the defendants that complainant is the owner of the second note, and that the same remains unpaid. Some reliance seems to be put upon the testimony of the witness Johnson that he found the assignment of the decree pinned to the first note, and in an envelope not containing the second note, as evidence tending to show that the security had been surrendered up by Davis when the second note was given, as evidence of the extension of the loan. As already stated, the fact that the second note and the assignment of the foreclosure decree were found among Bean's papers after his death cannot be taken as evidence that the same had been paid, released, or given up during Davis' lifetime, for the reason that Bean became his administrator, and, as such, took possession of all papers belonging to the estate. Any disposition Bean made of the papers thus coming into his possession, in the way of pinning them together, or placing them in particular envelopes, cannot be considered evidence in favor of his estate; and there is nothing in the evidence to show that Davis sent them, thus pinned together, to Bean, or that he, in fact, ever returned the assignment to Bean for any purpose. Furthermore, if any consideration can be given to the fact testified to by the witness Johnson, that he found the assignment of the foreclosure decree pinned to the first note given by Bean to Davis, as evidence of the loan of $10,000 by the latter to the former, it does not necessarily tend to show that the assignment had been given up as no longer in force, but rather the contrary. Johnson testifies that the first note, to which the assignment was pinned, was canceled, in that several pen marks were drawn across the signature thereto, but the assignment remained intact and not canceled in any mode. Edwin Bean was a lawyer of years' experience. He, doubtless, well knew that when a loan of money is made on security, and subsequently the time of payment is extended, and a new note is given as evidence thereof, the security remains pledged as before for the debt, now evidenced by the new note, and is not released or discharged by the mere fact that a second note has been executed as evidence of the debt. If he received back the assignment of the decree from Davis as a release of it as security, why was it not canceled as well as the note? Instead of canceling or destroying it, thereby preventing any question about the fact of its continuance, existence, and force, he carefully preserved it along with the original note. If he had destroyed the original note, and had placed the assignment with the second note, it would not have appeared that the note and assign-

ment had any necessary connection. The assignment was made a year before the date of the second note, and in terms refers to the first note only. By pinning the first note and the assignment together, there was preserved the evidence of the loan as originally made, with the security given therefor; and the cancellation of the first note would be explained by showing that a second note had been given for the purpose of extending the time of payment of the original loan, leaving the security unimpaired. The extracts already given from the letters of Davis and Bean clearly show that Davis sent the first note only to Bean, and did not inclose or forward the assignment; and the act of pinning the one to the other must have taken place after Bean came into possession of the assignment as part of Davis' papers, coming into his hands as administrator; and, instead of proving that Bean understood that the security had been given up and released, it rather tends to show that Bean carefully preserved the written assignment, as being in force, and that he pinned it to the original note, in order to preserve the written evidence of the transactions between Davis and himself, touching the $10,000 loan.

It must, therefore, be held that it appears that in the latter part of May, 1887, Edwin Bean contracted to borrow from Joseph B. Davis the sum of $10,000, for the period of one year, and agreed to give, as collateral security for the loan, an assignment of the foreclosure decree rendered in his favor in the district court of Winneshiek county against the Addickens; that, in pursuance of this agreement, Davis sent the money to Bean, who executed his note for the named sum, and signed and delivered the assignment of the foreclosure decree as collateral security therefor; that the loan thus made and secured was afterwards extended for one year, and a new note was executed by Bean, and delivered to Davis, as evidence thereof; and that under the provisions of the will of said Joseph B. Davis, deceased, the complainant is now the owner of said note, evidencing said loan, and, as such, is entitled to the benefits of the mortgage foreclosure decree held by Bean, and by him pledged as security for the named loan, as against the defendants representing his estate.

In considering and deciding the issues arising between the complainant and the defendants, who are the representatives of the estate of Edwin Bean, it will be noticed that the conclusions reached are based wholly upon the evidence showing the acts of Edwin Bean and Joseph B. Davis, including the letters passing between them, and of which the originals are introduced in evidence, thus leaving out of consideration all matters and testimony offered touching which any question affecting its admissibility has been made; it being proper, however, to say that the matters offered in evidence, and objected to, if considered, would tend to support the conclusion reached as herein stated.

Upon behalf of the interveners, as already stated, it is claimed that the money loaned to the Addickens by Bean formed part of the money placed in his hands by Stephen Burton, which became a trust fund in such sense that the trust attached thereto in any

investment made thereof by Bean, and enables the beneficiaries to follow it so long as it can be identified. The evidence shows that, when Burton placed the money in the hands of Bean, he required and received from him security on realty situated in Chicago; and it is clear that Burton did not place the money in Bean's care for the purpose of having him invest it safely for Burton and his heirs. In the instrument executed by Bean to Burton, there is nothing said about the investment of the money, nor is there any provision for an accounting by Bean for the investment or its proceeds. The money became Bean's, so that he could invest it as he saw best; and, if the investment was unfortunate, the loss would fall upon Bean, and, if. it was profitable, the profit would belong to Bean. The obligation assumed by Bean was not that of safely investing the money, and duly accounting for the profits; but it was an absolute agreement to repay the sum loaned him, in the manner pointed out in the written obligation delivered to Burton,. with interest thereon; and this obligation exists without regard to the question of whether Bean made a profit on the investment of the money or not. It is entirely clear that Bean had the right to invest or loan the money as he deemed best, and to take the investment in his own name; and it is not claimed, nor could it rightfully be claimed, that he, in any sense, violated any duty or obligation to Burton or his children in taking the mortgage on the Decorah property in his individual name. The question for consideration is not that of the equities that may exist between Burton's heirs and Bean's estate. The proper parties for the determination of that question are not before the court, as the only issue upon the intervening bill is that presented by the answer of Elizabeth B. Davis thereto; and the court is not called upon to determine whether the Burton heirs can assert a claim to the fund represented by the Addicken mortgage, as against Bean's estate, but the sole question is whether the Burton heirs can show a paramount and superior right to the mortgage, as against the title thereto, created by the assignment made thereby by Bean to Davis, under the circumstances hereinbefore recited.

The evidence demonstrates that Davis was an innocent purchaser, for full value, of the mortgage decree in which the mortgage had been merged, and of all benefits conferred thereby; and he obtained thereby a title to the decree in question, which is superior to any equity existing in favor of the Burton heirs. The mortgage given by Addicken stood in the name of Edwin Bean, as the owner thereof; and the decree of foreclosure had been granted in Bean's name, and there was nothing in the situation to charge Davis with notice of any equity or right held or claimed by any one to the property in question; and, when he loaned his money to Bean upon the faith of a transfer of the foreclosure decree as collateral security, he took the same as it appeared of record, and free from any secret liens or equities on behalf of the parties to this proceeding. Complainant is therefore entitled to a decree ascertaining the amount due upon Bean's note to Davis, declaring the property covered by the mortgage from Addicken to Edwin Bean, and included in the foreclosure decree assigned to Davis, to be bound for the payment of the

sum found due complainant, excepting therefrom any part of the property sold by Bean to third parties; that an accounting be had of the money received by Levi Bullis from the mortgaged property as payment for any part thereof, or for rental or use thereof, and after due allowance for his services and expenditures in that behalf; the balance shall be applied in payment, pro tanto, of the sum found due complainant; that it be ordered that, if the net sum found due complainant be not paid within a time named in the decree, the property covered by the mortgage decree, and not sold by Bean, or so much thereof as may be necessary, shall be sold at the front door of the courthouse in Decorah, Winneshiek county, Iowa, at public sale, by a special master of this court, after due notice given; that the purchaser or purchasers of the property so sold shall take the title thereto free from all claims, liens, rights, equities, or titles on behalf of complainant, of the defendants representing the estate and rights of Edwin Bean, deceased, or on behalf of the estate or heirs of Stephen Burton, deceased; that said master make due report of his doings in the premises; that, upon confirmation of the sale or sales made, the proceeds realized therefrom be applied in payment of the costs, and in payment of the sum decreed due to complainant, with interest, and the balance left, if any, be paid into court, subject to further order; and that defendants be adjudged to pay the costs created by the issues by them presented, and the interveners be adjudged to pay the costs arising upon the issues by them presented.